LIBERTY MUTUAL FIRE
INSURANCE COMPANY,
Appellant

v.

Walter L. CATO, Jr., Administrator of
the Estate of Gary G. Crow; and
Annette Crow, Appellee

NO. 2014–CA–000403–MR

Court of Appeals of Kentucky.

RENDERED: JULY 10,
2015; 10:00 A.M.

Discretionary Review Denied by Supreme
Court March 9, 2016

BRIEF FOR APPELLANT: Timothy
J. Walker, Lexington, Kentucky

BRIEF FOR APPELLEE: G. Adam Redden, Louisville, Kentucky

BEFORE: COMBS, J. LAMBERT, AND STUMBO, JUDGES.

*OPINION*

COMBS, JUDGE:

Liberty Mutual Fire Insurance Company appeals from separate summary judgments of the Jefferson Circuit Court entered in favor of Walter L. Cato, Jr., administrator of the Estate of Gary G. Crow, and in favor of Annette Crow. After our review, we affirm.

On October 14, 2008, Gary Crow was killed in a work-related accident. At the time of his death, Crow was employed by HMT, Inc. HMT provides retro-fittings and modifications to above-ground storage tanks. It also provides trained workers to repair and maintain these tanks. HMT is headquartered in The Woodlands, Texas. Liberty Mutual is its workers' compensation insurer in every state in which HMT operates—including Kentucky and Texas.

At the time of the accident, Crow, a Texas resident, had been assigned by HMT to repair or maintain storage tanks owned by Citgo Petroleum Corporation in Jefferson County, Kentucky. Crow was electrocuted when the aerial lift he was using made contact with high voltage power lines crossing above the tanks.

After Crow's death, his widow, Annette Crow, received death benefits from HMT. She also filed a worker's compensation claim in Texas. She received benefits in the amount of $699,220.56 in accordance with the workers' compensation provisions of the Texas Labor Code.

On October 8, 2009, Cato as administrator of Crow's estate and Annette filed a wrongful death action in Jefferson Circuit Court. As defendants, they named LG & E Energy Inc.; E.ON U.S., LLC; and LG & E Power Inc. Annette and the estate alleged that the utility companies had breached a duty of care to Gary Crow by failing to protect him from injury and death as he worked near their power lines. Pursuant to the provisions of Kentucky Revised Statutes[s] (KRS) 411.188 (requiring notice to parties believed by the plaintiff to hold subrogation rights), Crow's estate and his widow notified HMT and Liberty Mutual that the tort action had been filed.

On March 22, 2011, Liberty Mutual intervened in the action. Citing provisions of the Texas Labor Code, it contended that it was subrogated to the rights of the deceased employee and that it intended to enforce the liability of the utility companies in the amount of the damages recovered by Crow's widow and his estate to the extent that those damages duplicated the workers' compensation death benefits paid.

On December 11, 2011, the defendant utility companies filed a third-party complaint against HMT and Citgo. They sought indemnity, contribution, and/or apportionment for any damages recovered by Crow's widow and/or his estate. Ultimately, the utility companies' claims against both HMT and Citgo were dismissed by agreement.

Annette and his estate settled their claims against the utility companies in July 2013. The action against the utility companies was dismissed, and the proceeds of the settlement agreement were deposited into an escrow account. What portion of the settlement would be applied to Liberty Mutual's subrogation claim was an issue left to be adjudicated by the trial court.

On July 15, 2013, Crow's widow and his estate filed motions for partial summary judgment. In a memorandum in support of one of their motions, Crow's widow and

his estate contended that Liberty Mutual had waived its right to enforce the liability of the utility companies in its contract to provide workers' compensation insurance to HMT. Crow's widow and his estate argued that the waiver was enforceable and that the claim of Liberty Mutual to be subrogated to the rights of the deceased employee should, therefore, be dismissed. Liberty Mutual filed a timely response.

In its response, Liberty Mutual conceded that it had waived its right to subrogation in an endorsement to the policy with respect to Citgo—the entity with which its insured (HMT) had agreed not to pursue for tort damages in the event an HMT employee was injured. However, Liberty Mutual vehemently denied that it had waived its right to subrogation with respect to the utility companies.

On September 11, 2013, the Jefferson Circuit Court entered an order granting the motions for summary judgment. The court concluded that Liberty Mutual had waived its subrogation rights with respect to the claims asserted by Crow's widow and his estate against the utility companies. The court based this conclusion upon a provision of the contract between HMT and Citgo. The contract required HMT to secure a workers' compensation insurance policy that included a provision waiving the insurer's subrogation rights as to any claims for injury or death against Citgo, "its subsidiaries, joint venturers and affiliates and its and their officers, directors, agents, employees and invitees...." The court determined that the utility companies were Citgo's invitees and thus were included by reference in an endorsement to the worker's compensation insurance policy issued to HMT by Liberty Mutual.

The circuit court denied Liberty Mutual's motion to alter, amend, or vacate. On February 5, 2014, the Jefferson Circuit Court granted the motion of Crow's widow and his estate for a summary judgment with respect to the entire dispute between the parties. This timely appeal followed.

On appeal, Liberty Mutual contends that the judgment should be reversed and the matter remanded. It contends that the trial court erred by concluding that it had waived its right to subrogation with respect to the utility companies and that the value of its subrogation claim should be decided in accordance with Texas law.

Upon our review of the trial court's summary judgment, we must decide whether the court correctly determined that there are no genuine issues as to any material facts and that the moving party is entitled to judgment as a matter of law. Kentucky Rule[s] of Civil Procedure (CR) 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991).

Pursuant to an endorsement to the workers' compensation policy issued by Liberty Mutual to HMT covering claims made at the time of the decedent's accident, Liberty Mutual had a right to recover "our payments from anyone liable for an injury covered by this policy." However, Liberty Mutual agreed that it would "not enforce our right against the person or organization named in the Schedule...." The endorsement provided that the waiver was not to "operate directly or indirectly to benefit anyone not named in the Schedule." The "Schedule" identifies "[a]ny person or organization for whom [HMT] has agreed by written contract to furnish this waiver."

Liberty Mutual agrees that HMT promised in its contract with Citgo that its workers' compensation carrier (Liberty

Mutual) would not assert subrogation rights against Citgo, anybody affiliated with Citgo, or any other participants in the work that was being performed at the time that HMT was providing its services to Citgo. However, Liberty Mutual argues that Citgo could have had no reason to require HMT to waive subrogation rights with respect to the utility companies and contends that the circuit court erred by concluding that LG & E was Citgo's "invitee."

Irrelevant to our analysis is the issue of whether Citgo *had a reason* to require HMT to secure workers' compensation insurance from an insurer that would waive its subrogation rights with respect to an injury caused by a representative of the utility company. In the written endorsement to the policy that it provided to HMT, Liberty Mutual specifically agreed "not [to] enforce our right against the person or organization named in the Schedule...." The "Schedule" then identifies "[a]ny person or organization for whom [HMT] has agreed by written contract to furnish this waiver." HMT agreed in its written contract with Citgo to secure a workers' compensation insurance policy that included a provision waiving the insurer's subrogation rights as to any claims for injury or death against Citgo, "its subsidiaries, joint venturers and affiliates and its and their officers, directors, agents, employees and invitees...." The court did not err by determining that a representative of the utility companies was Citgo's invitee and was thus incorporated by reference in the endorsement to the worker's compensation insurance policy issued to HMT by Liberty Mutual.

While Liberty Mutual argued in its brief that LG & E was not at all involved in the work being done at Citgo's storage tanks at the time Crow was electrocuted, Annette and his estate contended that Citgo had contacted LG & E to ask for assistance before the storage tank work was undertaken on its premises. According to the estate and Annette, LG & E placed caution tags on the high voltage lines and turned off a "recloser" in response to Citgo's request for assistance before the work began. In fact, it was the alleged failure of the utility companies to take further necessary measures to protect those on the premises that underlay the wrongful death action asserted by Crow's estate and his widow.

In its reply, Liberty Mutual conceded that a representative of the utility company "attended to certain precautions in connection with the work that was going to be done" by HMT. However, Liberty Mutual claimed that this action was merely an obligation owed or a courtesy provided by the utility company and was not performed "pursuant to any contract with Citgo or anybody else involved with the work...." Liberty Mutual argued that there was no evidence that the utility company received any compensation or consideration for its efforts and suggested that for this reason the utility company representative cannot be characterized as an "invitee." Liberty Mutual argued that the representative of the utility company could be characterized as an "invitee" only if the term was defined more broadly than the parties to the contract could have intended. We disagree.

The *Restatement (Second) of Torts* § 332 (1965) observes that "invitee" is a term of art with a special meaning in the law. A person is characterized an "invitee" if:

(1) he enters by invitation, express or implied, (2) his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land and (3) there is

mutuality of benefit or benefit to the owner.

*Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.*, 997 S.W.2d 490, 491–492 (Ky.App.1999) (quoting *Black's Law Dictionary*, 827 (6th ed. 1990)) (internal quotation marks omitted). *See also* 62 Am.Jur.2d *Premises Liability* § 87 (1990).

There is little doubt that the utility company's representative would have been characterized by the courts as an "invitee" had he suffered personal injury in the course of his regular duties on the premises and filed a negligence action against Citgo. In fact, it has been observed that: [i]n actions for personal injury to meter readers or similar public service employees coming upon premises in connection with the utilities supplied thereto, the courts have usually treated the employee as an invitee of the person responsible for the maintenance of the premises and accordingly have imposed the ordinary duty of a landowner to an invitee....

J.D. Perovich, Annotation, *Liability of Owner or Operator of Premises for Injury to Meter Reader or Similar Employee of Public Service Corporation Coming to Premises in Course of Duties*, 28 A.L.R.3d 1344, 1346 (1969)(footnotes omitted).

Where, as here, the landowner (Citgo) specifically requested the assistance of the representative of the utility company on its premises, it is beyond dispute that he be characterized as an "invitee." The waiver included in Liberty Mutual's workers' compensation policy is unambiguous and must be enforced as written.

In light of our resolution of this case based solely on the issue of Liberty Mutual's waiver of subrogation rights, any argument regarding the choice-of-law issue is moot. Therefore we need not address that issue and have refrained from doing so.

Therefore, we affirm the separate summary judgments of the Jefferson Circuit Court.

ALL CONCUR.